# ORIGINAL

# In the District Court of the United States

### For the Northern District of New York

(94)

THE UNITED STATES OF AMERICA

-vs-

TOMMY WALKER,
PRENTIS LINDSEY,
KEVIN WATSON aka "Archie Hooks,
JORGE PASQUAL
HENRY O. FELTON aka "Guess"
ANDRE GALLOWAY aka "Gap"
BRYAN HUNTER aka "Freedom"
ROBERT DOLE
RAYMOND COBBS
CYNTHIA CHANEY
LORRAINE HOWARD
MELVINA BENNETT,
GARY MILLER
GEORGE BELGROVE
GREGORY LEON WHITEHURST
DAVID KYLES

Defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

_____ Term

No.
95-CR-101(HGM)

Vio. 18 USC § 2
18 USC § 371
18 USC § 841(a)(1)
18 USC § 922(g)(1)
18 USC § 924(a)(2)
18 USC § 924(c)(1)
18 USC § 924(c)(2)
18 USC § 924(g)(1)
21 USC § 841(a)(1)
21 USC § 846
21 USC § 848(a)
21 USC § 848(c)
21 USC § 853

[Felonies]
[27 Counts]



U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

OCT 19 1995

AT _____ O'CLOCK _____ M
GEORGE A. RAY, CLERK
SYRACUSE

SECOND SUPERSEDING
INDICTMENT

### INTRODUCTION

#### THE GRAND JURY CHARGES:

#### THAT AT ALL TIMES MATERIAL TO THIS INDICTMENT:

### THE ENTERPRISE AND THE CONSPIRACY

A.    Beginning sometime in 1991, the exact date being unknown to the Grand Jury, and continuing thereafter up to March 21, 1995, in the Northern District of New York and elsewhere, there existed:

1

1. A criminal organization which constituted a "Continuing Criminal Enterprise" as that term is defined in Title 21, United States code, Section 848(c); namely, a group of individuals who occupied positions as organizers, supervisors and managers and who generated substantial income and resources by committing a felony drug offense pursuant to Title 21 of the United States Code which was part of a continuing series of such offenses undertaken in concert with five or more persons; and,

2. A knowing, intentional and unlawful combination, conspiracy, confederation, and agreement between the members of the Continuing Criminal Enterprise and with other persons known and unknown to the Grand Jury, to possess with intent to distribute and to distribute, cocaine, cocaine base (CRACK) and methamphetamine (ICE), schedule II controlled substances and marijuana, a schedule I controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and in violation of Title 18, United States Code, Section 2.

3. The Enterprise and Conspiracy was referred to as the **"WALKER/LINDSEY ORGANIZATION"** because it possessed a structure and because TOMMY WALKER and PRENTIS LINDSEY were its leaders and directed and controlled its affairs.

## THE PURPOSE OF THE ENTERPRISE AND CONSPIRACY

B. The principal purpose of the **WALKER/LINDSEY ORGANIZATION** was to generate money through the distribution of cocaine, cocaine base (CRACK), methamphetamine (ICE) and marijuana in the Cities of Utica, Rome and Auburn, New York and the surrounding areas.

**METHODS AND MEANS OF THE ENTERPRISE AND CONSPIRACY**

C. At various times throughout the period of this indictment, the purpose of the WALKER/LINDSEY ORGANIZATION was achieved through the following methods and means:

1. Managers obtained cocaine, cocaine base (CRACK), methamphetamine (ICE) and marijuana from suppliers in New York City and elsewhere.

2. Acting under the supervision of managers, the cocaine and cocaine base (CRACK) were transported from the suppliers in New York City to the Central New York area by lower level members of the organization (commonly known as "couriers" or "mules"). The "mules" delivered the cocaine and cocaine base (CRACK) to managers in Utica.

3. Managers took control of the cocaine and cocaine base (CRACK) and divided it up into packages containing lots of individual units for retail sale. The managers then distributed these packages to middle level members of organization who acted as foremen and who supervised the drug sellers (commonly referred to as "shorties") who sold this cocaine and cocaine base (CRACK) to individual customers.

4. Managers recruited "shorties" to sell these drugs from apartments and hotel rooms known as "spots" in Utica, Rome and Auburn, New York.

5. In an effort to limit and frustrate police surveillance, to protect its operations and avoid detection, the **WALKER/LINDSEY ORGANIZATION** sent members to various locations in

Utica, Rome and Auburn, New York and other locales to locate and secure new "spots" unknown to law enforcement officials.

6. In order to limit detection and apprehension by police and to promote its purpose and affairs, the **WALKER/LINDSEY ORGANIZATION** used one or more of the following means to conduct their drug distribution business:

a. Managers placed middle level foremen in the spots to supervise the "shorties" in their sale of drugs and their collection of money from the drug customers. Managers supplied the foremen with packages of drugs which had to be sold before a new package would be delivered to the "spot".

b. Drug customers were sometimes brought to the spot by "steerers" who were paid a fee by the foremen of the spot for doing so. This fee was paid to the steerers by the foremen in either money or drugs.

c. Foremen in the spots communicated with managers of the **WALKER/LINDSEY ORGANIZATION** by using telephones and pagers (beepers) and routinely utilized codes to avoid detection by the police.

d. At times, lower level members of the organization, principally females, were used to secrete and carry drugs and currency on their persons so that higher level members did not directly possess such items.

e. Managers of the **WALKER/LINDSEY ORGANIZATION** were compensated in various ways, including sharing in the profits from the monies realized as the result of monies turned in by the

4

foremen of the "spots". Foremen were paid a fixed fee or wage as well as being allowed to keep the difference between the sales prices of the cocaine and cocaine base (CRACK) and the fixed cost of the drugs set by the managers for each package of drugs. "Shorties" were paid a fixed wage in money, drugs or a combination of the two.

6.   In order to promote the affairs of the **WALKER/LINDSEY ORGANIZATION**, managers had one or more of the following duties and responsibilities, among others:

a.   Maintaining control of the cocaine, cocaine base (CRACK), methamphetamine (ICE) and marijuana and the "spots";

b.   Supplying foremen with cocaine and cocaine base (CRACK), methamphetamine (ICE) and marijuana;

c.   Collecting monies generated in the "spots" from the sale of drugs from the foremen.

d.   Transporting "shorties" between "spots" as needed;

e.   Procuring firearms for use by members of the organization for their protection from robbery and interference by rival drug sellers.

f.   Maintaining control of drugs in the custody of "shorties" and foremen through the use of violence and threats of violence.

## ROLES OF THE ENTERPRISE DEFENDANTS AND SELLERS

D. At various times material to this indictment, the following defendants and co-conspirators occupied the designated roles, among others in the **WALKER/LINDSEY ORGANIZATION:**

1. **TOMMY WALKER** was one of the two organizers and leaders of the Continuing Criminal Enterprise and Conspiracy;

2. **PRENTIS LINDSEY** was the other of the two organizers and leaders of the Continuing Criminal Enterprise and Conspiracy.

3. **KEVIN WATSON**, a/k/a "Archie Hooks" was a manager and a member of the conspiracy and exercised first level of supervisory control over the organization's operations in Auburn, New York.

4. **JORGE PASQUAL** was a member of the conspiracy and was the major source of supply for cocaine and cocaine base (CRACK) in New York City.

5. **HENRY O. FELTON**, a/k/a "Guess" was a member of the conspiracy and acted, at times, as a foremen and drug seller.

6. **ANDRE GALLOWAY**, a/k/a "Gap" was a member of the conspiracy and acted as a drug seller.

7. **RAYMOND COBBS** was a member of the drug conspiracy and acted as a drug seller.

8. **CYNTHIA CHANEY** was a member of the drug conspiracy and stored drugs and firearms in her home for co-conspirators.

9. **BRYAN HUNTER**, a/k/a/ "Freedom" was a member of the conspiracy and drug seller.

10.  **ROBERT DOLE** was a member of the conspiracy and drug seller.

11.  **MELVINA BENNETT** was a member of the conspiracy and transported money and drugs for Prentis Lindsey and other co-conspirators.

12.  **GREGORY LEON WHITEHURST** was member of the conspiracy and transported drugs for the other members of the conspiracy.

13.  **DAVID KYLES** was a member of the conspiracy and transported drugs for other members of the conspiracy.

14.  **GARY MILLER** was a member of the conspiracy and transported drugs from New York City to Central New York.

15.  **GEORGE BELGROVE** was a member of the conspiracy and transported drugs from New York City to Central New York.

16.  **LORRAINE HOWARD** was a member of the conspiracy who stored drugs for Tommy Walker and others.

### THE GRAND JURY FURTHER CHARGES:

<u>COUNT 1</u>

**(CONTINUING CRIMINAL ENTERPRISE)**

A.  Paragraphs A-D of the introduction of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

B.  Beginning sometime in 1991 the exact date being unknown to the Grand Jury, and continuing thereafter up to March 21, 1995, in the Northern District of New York and elsewhere, the defendants

7

**TOMMY WALKER**
**PRENTIS LINDSEY**

knowingly, willfully and intentionally engaged in a Continuing Criminal Enterprise, in that, the said defendants committed violations of such felony provisions that are set forth in this indictment, which violations were part of a continuing series of violations of said statutes undertaken by the said defendants, who acted in concert with at least five (5) or more other persons with respect to whom the said defendants occupied the position of organizer, supervisor or manager, and from which continuing series of violations the said defendants obtained substantial income and resources.

All in violation of Title 21, United States Code , Section 848 (a) and (c), and Title 18, United States Code, Section 2.

## THE GRAND JURY FURTHER CHARGES:

## COUNT 2

### (NARCOTICS CONSPIRACY)

A.    Paragraphs A-D of the Introduction to this indictment are re-alleged and incorporated by reference as though fully set forth herein.

B.    Beginning sometime in 1991, the exact date being unknown to the Grand Jury, and continuing thereafter up to March 21, 1995, in the Northern District of new York and elsewhere,

**TOMMY WALKER**
**PRENTIS LINDSEY**
**KEVIN WATSON**

8

**JORGE PASQUAL**
**HENRY O. FELTON**
**ANDRE GALLOWAY**
**BRYAN HUNTER**
**ROBERT DOLE**
**RAYMOND COBBS**
**CYNTHIA CHANEY**
**LORRAINE HOWARD**
**MELVINA BENNETT**
**GARY MILLER**
**GEORGE BELGROVE**
**GREGORY LEON WHITEHURST**
**DAVID KYLES**

the defendants herein, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with one another and with other persons known and unknown to the Grand Jury, to possess with intent to distribute, and to distribute, cocaine, cocaine base (CRACK), and methamphetamine (ICE), schedule II controlled substances and marijuana, a schedule I controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 846.

### THE GRAND JURY FURTHER CHARGES:

### COUNT 3

On or about October 7, 1994, in the Northern District of New York, the defendant,

### TOMMY WALKER,

having been convicted of a crime punishable by a term of imprisonment exceeding one year, that being his conviction for CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE (New York State Penal Law, Section 265.02) in Oneida County Court on September 6, 1989, did knowingly, unlawfully and intentionally possess a firearm

transported in interstate commerce or foreign commerce, to wit: a nine millimeter Glock model 19 semi-automatic pistol, serial number AMG305-US, manufactured in Austria. and imported into the United States by Glock, Inc., Smyrna, Georgia.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

## THE GRAND JURY FURTHER CHARGES:

### COUNT 4

On or about the month of November 1994, the exact date being unknown to the grand jury, in the Northern District of New York, the defendant,

### TOMMY WALKER,

having been convicted of a crime punishable by a term of imprisonment exceeding one year, that being his conviction for CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE (New York State Penal Law, Section 265.02) in Oneida County Court on September 6, 1989, did knowingly, unlawfully and intentionally possess a firearm transported in interstate commerce or foreign commerce, to wit: a Norinco SKS semi-automatic rifle, caliber 7.62 x 39, serial number 24146661, manufactured in China and imported into the United States by CSI, Inc., Ontario, California.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

## THE GRAND JURY FURTHER CHARGES:

### COUNT 5

On or about the month of November 1994, the exact date being unknown to the grand jury, in the Northern District of New York, the defendant,

### TOMMY WALKER,

having been convicted of a crime punishable by a term of imprisonment exceeding one year, that being his conviction for CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE (New York State Penal Law, Section 265.02) in Oneida County Court on September 6, 1989, did knowingly, unlawfully and intentionally possess a firearm transported in interstate commerce or foreign commerce, to wit: an Amadeo Rossi/Interarms .38 caliber pistol, serial number D733725, manufactured in Brazil and imported into the United States by Interarms, Inc., Alexandria, Virginia.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).


## THE GRAND JURY FURTHER CHARGES:

### COUNT 6

On or about the month of November 1994, the exact date being unknown to the Grand Jury in the Northern District of New York, the defendant,

### TOMMY WALKER,

having been convicted of a crime punishable by a term of imprisonment exceeding one year, that being his conviction for

11

CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE (New York State Penal Law, Section 265.02) in Oneida County Court on September 6, 1989, did knowingly, unlawfully and intentionally possess a firearm transported in interstate commerce or foreign commerce, to wit: a Stevens 16 gauge shotgun, serial number 420T, manufactured in Chicopee, Massachusetts by the Stevens J. Arms and Tool Co.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

### THE GRAND JURY FURTHER CHARGES:

### COUNT 7

On or about November 2, 1994, in the Northern District of New York, the defendant,

### TOMMY WALKER,

and Tracey Blackwell, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute methamphetamine, a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

### THE GRAND JURY FURTHER CHARGES:

### COUNT 8

On or about November 9, 1994, in the Northern District of New York, the defendant,

### TOMMY WALKER,

knowingly and intentionally possessed with intent to distribute crack cocaine (cocaine base), a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

### THE GRAND JURY FURTHER CHARGES:

### COUNT 9

On or about November 9, 1994, in the Northern District of New York, the defendant,

### TOMMY WALKER,

knowingly and intentionally possessed with intent to distribute crack cocaine (cocaine base), a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

### THE GRAND JURY FURTHER CHARGES:

### COUNT 10

On or about November 15, 1994, in the Northern District of New York, the defendant,

### TOMMY WALKER,

knowingly and intentionally possessed with intent to distribute crack cocaine (cocaine base), a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

**THE GRAND JURY FURTHER CHARGES:**

### COUNT 11

On or about November 15, 1994, in the Northern District of New York, the defendant,

**TOMMY WALKER,**

knowingly and intentionally possessed with intent to distribute methamphetamine, a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).


**THE GRAND JURY FURTHER CHARGES:**

### COUNT 12

On or about December 27, 1994, in the Northern District of New York, the defendant,

**TOMMY WALKER,**

knowingly and intentionally possessed with intent to distribute crack cocaine (cocaine base), a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

**THE GRAND JURY FURTHER CHARGES:**

### COUNT 13

On or about February 23, 1995, in the Northern District of New York, the defendants,

**GREGORY LEON WHITEHURST and DAVID KYLES,**

14

aiding and abetting each other, knowingly and intentionally possessed with intent to distribute crack cocaine (cocaine base), a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

### THE GRAND JURY FURTHER CHARGES:

### COUNT 14

On or about February 23, 1995, in the Northern District of New York, the defendants,

**GREGORY LEON WHITEHURST and DAVID KYLES,**

aiding and abetting each other, knowingly and intentionally possessed with intent to distribute marijuana, a schedule I controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

### THE GRAND JURY FURTHER CHARGES:

### COUNT 15

On or about February 24, 1994, in the Northern District of New York, the defendant,

**KEVIN WATSON, a/k/a "Archie Hooks",**

knowingly and intentionally possessed with intent to distribute crack cocaine (cocaine base), a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

**THE GRAND JURY FURTHER CHARGES:**

**COUNT 16**

On or about March 21, 1995, in the Northern District of New York, the defendant,

**TOMMY WALKER, GARY MILLER,**

and Tracey Blackwell, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute crack cocaine (cocaine base), a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

**THE GRAND JURY FURTHER CHARGES:**

**COUNT 17**

On or about March 21, 1995, in the Northern District of New York, the defendants,

**TOMMY WALKER, GARY MILLER,**

and Tracey Blackwell, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute cocaine, a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

**THE GRAND JURY FURTHER CHARGES:**

**COUNT 18**

On or about March 21, 1995, in the Northern District of New York, the defendants,

16

**TOMMY WALKER and GARY MILLER,**

and Tracey Blackwell, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute crack cocaine (cocaine base), a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## THE GRAND JURY FURTHER CHARGES:

### COUNT 19

On or about March 21, 1995, in the Northern District of New York, the defendant,

**TOMMY WALKER,**

did knowingly use, carry, aid, abet, counsel, command, induce, procure, and willfully cause the use and carrying of a firearm, being, a 9 millimeter Glock semi-automatic pistol, serial number ANK-813-US, during and in relation to a drug trafficking crime for which the said defendant may be prosecuted in a court of the United States.

In violation of Title 18, United States Code, Sections 924(c)(1) and (2).

## THE GRAND JURY FURTHER CHARGES:

### COUNT 20

On or about March 21, 1995, in the Northern District of New York, the defendants,

**RAYMOND COBBS AND CYNTHIA CHANEY,**

17

aiding and abetting each other, knowingly and intentionally possessed with intent to distribute crack cocaine (cocaine base), a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.


## THE GRAND JURY FURTHER CHARGES:

### COUNT 21

On or about March 21, 1995, in the Northern District of New York, the defendants,

**RAYMOND COBBS AND CYNTHIA CHANEY,**

aiding and abetting each other, knowingly and intentionally possessed with intent to distribute methamphetamine, a schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.


## THE GRAND JURY FURTHER CHARGES

### COUNT 22

On or about March 21, 1995, in the Northern District of New York, the defendant,

**RAYMOND COBBS,**

did knowingly use, carry, aid, abet, counsel, command, induce, procure, and willfully cause the use and carrying of a firearm, being a Calico 9 millimeter semi-automatic pistol serial number I007664, during and in relation to a drug trafficking crime for

which the said defendant may be prosecuted in a court of the United States.

In violation of Title 18, United States Code, Sections 924(c)(1) and (2).

### THE GRAND JURY FURTHER CHARGES

### COUNT 23

On or about March 21, 1995, in the Northern District of New York, the defendant,

**RAYMOND COBBS,**

did knowingly use, carry, aid, abet, counsel, command, induce, procure, and willfully cause the use and carrying of a firearm, being a Ruger semi-automatic rifle Model 10/22 .22 LR caliber rifle, serial number 23373089, during and in relation to a drug trafficking crime for which the said defendant may be prosecuted in a court of the United States.

In violation of Title 18, United States Code, Sections 924(c)(1) and (2).

### THE GRAND JURY FURTHER CHARGES:

### COUNT 24

On or about March 21, 1994, in the Northern District of New York, the defendant,

**RAYMOND COBBS,**

having been convicted of a crime punishable by a term of imprisonment exceeding one year, that being his conviction for

RECKLESS ENDANGERMENT IN THE FIRST DEGREE (New York State Penal Law, Section 120.25) in Oneida County Court on March 8, 1993, did knowingly, unlawfully and intentionally possess a firearm transported in interstate commerce or foreign commerce, to wit: a Ruger semi-automatic rifle Model 10/22 .22 LR caliber rifle, serial number 23373089,, manufactured by Sturm Ruger in Southport, Connecticut.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

### THE GRAND JURY FURTHER CHARGES:

### COUNT 25

On or about March 21, 1994, in the Northern District of New York, the defendant,

### RAYMOND COBBS,

having been convicted of a crime punishable by a term of imprisonment exceeding one year, that being his conviction for RECKLESS ENDANGERMENT IN THE FIRST DEGREE (New York State Penal Law, Section 120.25) in Oneida County Court on March 8, 1993, did knowingly, unlawfully and intentionally possess a firearm transported in interstate commerce or foreign commerce, to wit: a Calico 9 millimeter semi-automatic pistol serial number I007664, manufactured by Calico Industries Inc., Bakersfield, California.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

20

## THE GRAND JURY FURTHER CHARGES:

### COUNT 26

From about October of 1993, and continuing thereafter until ~~October~~ December of 1994, the exact dates being unknown to the grand jury, in the Northern District of New York and elsewhere, the defendants,

### TOMMY WALKER and PRENTIS LINDSEY,

and others known and unknown to the grand jury, did knowingly and intentionally, combine, conspire, confederate and agree to:

(1) Possess and deal in firearms which had been purchased illegally and which had been transported or shipped in interstate or foreign commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A).

(2) Make false statements in the purchase of firearms from a licensed firearms dealer, in violation of Title 18, United States Code, Section 922(a)(6).

### MANNER AND MEANS

It was a part of the conspiracy that the defendants and others would:

(1) Acquire firearms;

(2) During the acquisition of firearms, fail to complete, or intentionally falsify, firearms record-keeping forms which were required by law to be completed;

(3) Sell, trade, or transfer these firearms in exchange for currency, illegal drugs, or other things of value.

21

## OVERT ACTS

In furtherance of this conspiracy, and to effect the objects and purposes thereof, the defendants did commit at least one of the following overt acts, among others, in the Northern District of New York and elsewhere:

(1) On or about October 23, 1993, Tommy Walker met with Tyrone Perkins and directed him to travel from the City of Utica, New York to the State of Ohio for the purpose of purchasing firearms and bringing them back to Utica. Tommy Walker supplied Perkins with a vehicle to make the trip and several thousand dollars in United States Currency to purchase firearms.

(2) On or about October 23, 1993, Tyrone Perkins traveled from Utica to Cleveland, Ohio and purchased the following firearms from Atlantic Gun and Tackle, Inc., in Bedford Heights, Ohio: a Glock 9 mm semi-automatic, serial number ANL402US; a Davis Industries P380 semi-automatic, serial number AP353846; and a Davis Industries P380 semi-automatic, serial number AP356922.

(3) In the course of purchasing these firearms, Tyrone Perkins made false statements on federally required record-keeping forms in violation of law.

(4) On October 23, 1993, Tyrone Perkins returned to Utica, New York and delivered to Tommy Walker all of the above referenced firearms.

(5) On or about November 21, 1993, Tommy Walker directed Tyrone Perkins to travel to Ohio to purchase firearms and return with them to Utica, New York. Tommy Walker supplied Tyrone Perkins

with approximately $3,000.00 cash for the purchase of these firearms.

(6) On November 22, 1993, Tommy Walker sent $1,000.00 from Utica, New York to Tyrone Perkins in Ohio via Western Union Money Transfer to be used to purchase firearms.

(7) On or about November 22, 1993, Tyrone Perkins purchased from the Atlantic Gun and Tackle, Inc. the following firearms: a Davis Industries P380 semi-automatic, serial number AP348451; a Davis Industries P380 semi-automatic, serial number AP363997; a Davis Industries P380 semi-automatic, serial number AP381-481; a Davis Industries P380 semi-automatic, serial number AP381483; an Interarms 9mm semi-automatic, serial number 1112783; a Glock 9 mm semi-automatic, serial number AMT694US; a Glock 9 mm semi-automatic, serial number AMT691US; an Interarms 9 mm semi-automatic, serial number 1112780; an Interarms 9 mm semi-automatic, serial number 1112785; an Interarms 9 mm semi-automatic, serial number 1109961; an Interarms 9 mm semi-automatic, serial number 027071; and an Interarms 9 mm semi-automatic, serial number 026856.

(8) In the course of purchasing these firearms at Atlantic Gun and Tackle, Inc. Tyrone Perkins made false statements on federally required record-keeping forms in violation of law.

(9) On or about November 23, 1993, Tyrone Perkins returned to Utica, New York and delivered to Tommy Walker the above-referenced firearms.

(10) On or about the month of November, 1993, the exact date being unknown, TOMMY WALKER and TYRONE PERKINS travelled from

Utica, New York to the City of New York. TOMMY WALKER and TYRONE PERKINS took the firearms purchased in the State of Ohio and attempted to sell them on the streets of New York City.

(11) On or about December 25, 1994 in Rome, New York TOMMY WALKER and PRENTIS LINDSEY gave each of the members of the organization assembled that night a Christmas bonus consisting of double their usual salary and a firearm.

All in violation of Title 18, United States Code, Section 371.

## THE GRAND JURY FURTHER CHARGES:

### COUNT 27

### Forfeitures

1.  Counts 1, 2 and 7 through 21 are incorporated by reference.

2.  In committing one or more of the felony offenses alleged in Counts 1, 2 and 7 through 21 of this Indictment, and in causing, aiding, abetting, counseling, commanding, inducing, and procuring their commission, the defendants,

**TOMMY WALKER and PRENTIS LINDSEY,**

obtained, directly and indirectly, during the periods alleged in the said counts, proceeds in U.S. currency, as a result of violations of Title 21, United States Code, Sections 841, 846, and 848, including but not limited to the approximate aggregate amount of $185,000.00.

3.  By virtue of the commission, and the causing, aiding, abetting, counseling, commanding, inducing and procuring the

commission, of the felony offenses charged in Counts 1-10, 12, 13 and 19 of this Indictment by the defendants,

**TOMMY WALKER and PRENTIS LINDSEY,**

any and all interest the said defendants have in the above described property is vested in the United States and hereby forfeited to the United States pursuant to Title 21, United States Code, Section 853.

_Sandra Kane_
FOREPERSON OF THE GRAND JURY

Thomas J. Maroney
United States Attorney

By: _Richard R. Southwick_
Richard R. Southwick
Assistant U.S. Attorney
Bar Roll No. 506265

No. 95-CR-101 (HGM)

# IN THE DISTRICT COURT
## IN THE UNITED STATES
### FOR THE
### NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

TOMMY WALKER, PRENTIS LINDSEY, KEVIN WATSON
JORGE PASQUAL, HENRY O. FELTON, ANDRE GALLOWAY
BRYAN HUNTER, ROBERT DOLE, RAYMOND COBBS,
CYNTHIA CHANEY, LORRAINE HOWARD,
MELVINA BENNETT, GARY MILLER, GEORGE BELGROVE,
GREGORY WHITEHURST and DAVID KYLES,

## SECOND SUPERSEDING INDICTMENT

HON. THOMAS J. MARONEY
United States Attorney, NDNY
P. O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
Telephone: (315) 448-0672
Fax (315) 448-0689

Filed _____, 19 _____

_____ Clerk

By: _____, Deputy